MOEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone:   (510) 500-9994
Email:        hanni@mlf-llp.com

Attorneys for Ardit Ferizi

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARDIT FERIZI,<br><br>Defendant. | **Case No.:** 3:21-CR-00027-WHA<br><br>**DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING**<br><br>**Court:**  Courtroom 12, 19th Floor<br>**Hearing Date:**  March 22, 2022<br>**Hearing Time:**  2:00 p.m. |

**TO:  STEPHANIE M. HINDS, UNITED STATES ATTORNEY; AND**
**GARTH HIRE, ASSISTANT UNITED STATES ATTORNEY.**

PLEASE TAKE NOTICE that Defendant Ardit Ferizi hereby moves this Court to dismiss the indictment due to vindictive prosecution. This motion is based upon this memorandum of points and authorities and accompanying exhibits, the Fifth Amendment to the U.S. Constitution, all other applicable constitutional, statutory, and case authority, and all evidence and argument that may be presented at the hearing of this motion, to be held on March 22, 2022 at 2:00 p.m. in Courtroom 12 on the 19th floor of the San Francisco courthouse. Mr. Ferizi requests an evidentiary hearing on the motion.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

    A.    During his 2016 prosecution, Mr. Ferizi tells the FBI his Google account has stolen data. ........................................................................................................................ 2

    B.    The FBI opens and closes an investigation of Mr. Ferizi in 2018. ................................ 4

    C.    Mr. Ferizi is granted compassionate release in 2020. ..................................................... 6

    D.    A criminal complaint is filed in 2021 after Mr. Ferizi is granted compassionate release. ........................................................................................................................... 9

ARGUMENT ............................................................................................................................. 12

    A.    Charging Mr. Ferizi after he was granted compassionate release is vindictive. ............. 13

    B.    The burden is on the government to rebut the presumption of vindictiveness. .............. 16

    C.    The government must produce documents relevant to resolving this motion. .............. 16

    D.    At a minimum, this Court should order an evidentiary hearing. ................................... 18

CONCLUSION .......................................................................................................................... 19

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

i

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3   *Bordenkircher v. Hayes*, 434 U.S. 357 (1978) .................................................................. 12

4   *United States v. Burt*, 619 F.2d 831 (9th Cir. 1980) ........................................................ 12

5   *United States v. Cedano-Arellano*, 332 F.3d 568 (9th Cir. 2003) (per curiam) ................... 18

6   *United States v. DeMarco*, 550 F.2d 1224 (9th Cir. 1977) .............................................. 15

7   *United States v. Doe*, 705 F.3d 1134 (9th Cir. 2013) ...................................................... 18

8   *United States v. Ferizi*, 2021 WL 5320860 (4th Cir. Nov. 16, 2021) (per curiam) ............. 11

9   *United States v. Gallegos-Curiel*, 681 F.2d 1164 (9th Cir. 1982) ................................ 12, 16

10  *United States v. Goodwin*, 457 U.S. 368 (1982) ........................................................... 16

11  *United States v. Groves*, 571 F.2d 450 (9th Cir. 1978) ............................................. 12, 14

12  *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013) ..................................... 18

13  *United States v. Hooton*, 662 F.2d 628 (9th Cir. 1981) .................................................. 13

14  *United States v. Jenkins*, 504 F.3d 694 (9th Cir. 2007) ....................................... 12, 13, 16

15  *United States v. McWilliams*, 730 F.2d 1218 (9th Cir. 1984) .......................................... 13

16  *United States v. Mejia*, 69 F.3d 309 (9th Cir. 1995) ..................................................... 18

17  *United States v. Robison*, 644 F.2d 1270 (9th Cir. 1981) ............................................... 12

18  *United States v. Ruesga-Martinez*, 534 F.2d 1367 (9th Cir. 1976) ............................... 13, 16

19  *United States v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016) ....................................... 17, 18

20  *United States v. Stever*, 603 F.3d 747 (9th Cir. 2010) ................................................... 17

21

### **Statutes**

22  18 U.S.C. § 1028 ..................................................................................................... 10

23  18 U.S.C. § 1028A ................................................................................................. 3, 10

24  18 U.S.C. § 1029 ..................................................................................................... 10

25  18 U.S.C. § 1030 ....................................................................................................... 3

26  18 U.S.C. § 1343 ..................................................................................................... 10

27  18 U.S.C. § 1349 ..................................................................................................... 10

28  18 U.S.C. § 2339B ..................................................................................................... 3

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

ii

18 U.S.C. § 3553 ....................................................................................... 7, 12

18 U.S.C. § 3582 .......................................................................................... 6

## **Federal Rules**

Federal Rule of Criminal Procedure 16 .................................................. 11, 17, 18

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

iii

1

## <u>INTRODUCTION</u>

2    Ardit Ferizi is charged in a five-count indictment with conspiracy, wire fraud, possessing an

3    unauthorized access device, transfer of a stolen identification document, and aggravated identity

4    theft. The alleged criminal conduct took place in February 2018, while Mr. Ferizi was housed by the

5    Bureau of Prisons ("BOP") at USP Terre Haute in Indiana, serving a 20-year prison sentence for a

6    2016 conviction from the Eastern District of Virginia. The government's accusation is that Mr. Ferizi

7    had a Google Drive account that contained databases of stolen personally identifiable information

8    ("PII") and online account access data and, in 2018 while in prison, provided his Google credentials

9    to his brother abroad, who downloaded all the data for the alleged purpose of engaging in fraud.

10    Although Mr. Ferizi told the FBI personally about the existence of the Google Drive contents in

11    2016, and although the FBI knew as of 2018 that Mr. Ferizi had asked his brother to keep his Google

12    Drive account active, the government nonetheless did not charge him with a crime until January

13    2021, when a criminal complaint was filed in the Northern District of California, a district where Mr.

14    Ferizi has never stepped foot in, and where neither the account holders or even the FBI case agent

15    who swore out the criminal complaint reside.

16    The government's delayed charge was not due to newly discovered and unavailable evidence.

17    Instead, this criminal prosecution was motivated by the fact Mr. Ferizi had been granted

18    compassionate release in his Eastern District of Virginia case on December 3, 2020, and the

19    Honorable Leonie M. Brinkema had ordered Mr. Ferizi be remanded into immigration custody

20    immediately so he could be promptly removed to his native Kosovo. Having never mentioned any

21    allegation of criminal activity by Mr. Ferizi while in the BOP as it was contesting his compassionate

22    release motion, and having been denied a stay of the compassionate release order by both Judge

23    Brinkema and the Fourth Circuit Court of Appeals, the government instead decided to file a criminal

24    complaint on the other side of the country to evade Judge Brinkema's mandate and ensure Mr. Ferizi

25    would not be released from jail.

26    There is only one word to describe the government's actions in this case: vindictive. This

27    prosecution punishes Mr. Ferizi for successfully filing for compassionate release and whatever the

28    outcome of this motion, the government has already succeeded. By filing the complaint on the other

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

1

1  side of the country, taking three months to transport Mr. Ferizi into the district, and burying him

2  under a mountain of discovery, the government was able to keep Mr. Ferizi in custody during the

3  eleven months the Fourth Circuit took to rule on the government's appeal of Mr. Ferizi's

4  compassionate release request.

5       The government's decision to punish Mr. Ferizi for exercising his statutory right to seek

6  compassionate release violates his Fifth Amendment right to due process. The indictment should be

7  dismissed.

8  ## STATEMENT OF FACTS

9  **A.**    **During his 2016 prosecution, Mr. Ferizi tells the FBI his Google account has stolen data.**

10       Mr. Ferizi was born in Gjakova, Kosovo in 1995. At that time, Kosovo had been experiencing

11  ethnic violence, as Serbian military and police forces fought Kosovar Albanians. As the violence

12  intensified, NATO began airstrikes in 1999 to get Serbian troops out of Kosovo. Violence was all

13  around Mr. Ferizi and when he was just four years old, he saw his own uncle shot and killed by

14  Serbian police forces. Clearly suffering from trauma, Mr. Ferizi abused drugs as a teenager and

15  became increasingly withdrawn from the physical world, retreating to the Internet where he found

16  notoriety as a skilled computer hacker.

17       In 2013, his family helped relocate him to Malaysia for college, where they hoped he could use

18  his computer skills to earn a degree in computer science. But away from home in a foreign country,

19  he faced mental health struggles and continued to abuse drugs. He missed classes and spent more

20  time online. He connected with one computer hacker online in particular, who was a supporter of the

21  ISIS terrorist group. In 2015, Mr. Ferizi hacked into a database of an American retailer, took a

22  database of customer records from 2006, and extracted email and password combinations that

23  appeared to belong to government and military employees. He obtained approximately 1,300 email

24  and password combinations and passed them along to the ISIS affiliated hacker, who then reposted

25  the information on a Twitter account for the ISIS "hacking division," along with a threat.

26       The FBI was able to trace Mr. Ferizi to the hack of the retailer. At the request of the United

27  States, Malaysian authorities detained Mr. Ferizi on September 15, 2015; at the time he was 19 years

28  old. On October 6, 2015, a criminal complaint was filed in the Eastern District of Virginia, alleging

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

2

1   he had provided material support to a terrorist organization and engaged in computer fraud. Mr.

2   Ferizi was arrested on the complaint in Malaysia on October 12, 2015 and extradited to the United

3   States on January 22, 2016. Exh. A, Docket in *United States v. Ferizi*, 1:16-CR-00042-LMB (E.D.

4   Va.).

5          On January 26, 2016, as he was in transit to the Eastern District of Virginia, the FBI

6   interviewed Mr. Ferizi. Exh. B, January 28, 2016 FD-302 Report of Investigation. He told the FBI

7   how he accomplished the retail hack in detail, explained he was heavily using drugs at that time, and

8   expressed remorse for his actions. *Id.* at AF-000031-32, AF-000036-37. He also gave the FBI all his

9   email and social media account names, specifically telling the FBI that one of his emails was

10  arditferizi95@gmail.com. *Id.* at AF-000040.

11         The following day, Mr. Ferizi had his initial appearance on the complaint in the Eastern District

12  of Virginia and was appointed an attorney to represent him. The Department of Justice issued a press

13  release announcing Mr. Ferizi's arrest, noting the "investigation [was] being conducted by the FBI's

14  Washington Field Office and FBI's Jacksonville Division." Exh. C, January 27, 2016 Press Release,

15  "ISIL-Linked Hacker Arrives in U.S. to Face Terrorism Charges."

16         A four-count indictment was returned by an Eastern District of Virginia grand jury on February

17  16, 2016, charging Mr. Ferizi was conspiracy to provide material support to a terrorist organization,

18  18 U.S.C. § 2339B (count 1), providing material to support to a terrorist organization, 18 U.S.C. §

19  2339B (count 2), unauthorized computer access, 18 U.S.C. § 1030(a)(2)(C) (count 3), and aggravated

20  identity theft, 18 U.S.C. § 1028A(a)(2) (count 4). Exh. A, Dkt. 24. The case was assigned to the

21  Honorable Leonie M. Brinkema.

22         On June 15, 2016, Mr. Ferizi entered into a plea agreement with the government, agreeing to

23  plead guilty to counts 2 and 3 of the indictment, with the remaining counts dismissed by the

24  government. Exh. A, Dkt. 35. In the plea agreement, Mr. Ferizi admitted that in 2015, he had hacked

25  into a server of an American company, obtained PII of the company's customers, including

26  approximately 1,300 U.S. military and government personnel, and passed that information via email

27  to another computer hacker affiliated with ISIS, who then shared that information to other ISIS

28  supporters on Twitter. Exh. A, Dkt. 36. As part of his plea agreement, Mr. Ferizi agreed to a judicial

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

3

order of removal to Kosovo. Exh. A, Dkt. 37-39.

After his guilty plea, Mr. Ferizi met with representatives of the U.S. Attorney's Office and the FBI six times. During a debrief on August 3, 2016, Mr. Ferizi explained he "collected information from lots of databases and stored them on his computer, possibly in a dropbox account, and in the Google drive, arditferizi95@gmail.com." Exh. D, August 4, 2016 FD-302 Report of Investigation at AF-011137. The following day, Mr. Ferizi signed a consent a form and gave verbal consent to allow the government "to search all accounts," and "to try all of the accounts and password combinations" for his various email and social media accounts, including arditferizi95@gmail.com. Exh. E, August 5, 2016 FD-302 Report of Investigation at AF-011147. On August 9, 2016, Mr. Ferizi told the government "that in his Google drive, there is a lot of stolen data." Exh. F, August 10, 2016 FD-302 Report of Investigation at AF-011159. Almost three weeks later, on August 29, 2016, "the FBI accessed the arditferizi95@gmail.com account" using a password supplied by Mr. Ferizi "and by successfully responding to the recovery question, which was the secondary e-mail address listed on the account, arditferizi@hotmail.com." Exh. G, December 29, 2020 FD-302 Report of Investigation at AF-000077.

Mr. Ferizi met with the government two more times in September 2016. But ultimately, it did not give him any sentencing credit for the information he provided. At sentencing, the government requested the statutory maximum sentence of 25 years (300 months). Mr. Ferizi asked the Court to sentence him to 6 years (72 months) instead. Judge Brinkema ultimately gave Mr. Ferizi a downward variance and on September 23, 2016 sentenced him to 20 years (240 months) in the custody of the BOP, to be followed by 10 years of supervised release if not deported to Kosovo. Mr. Ferizi was 20 years old when sentenced. Exh. A, Dkt. 66.

**B.    The FBI opens and closes an investigation of Mr. Ferizi in 2018.**

After Mr. Ferizi was sentenced, the FBI placed his case on "pending inactive status" on May 4, 2017, in anticipation of formally closing the investigation when "the FBI confirms all remaining evidence and other case information is appropriately handled and provided to foreign partners." Exh. H, May 4, 2017 FD-1057 Electronic Communication at AF-000098.

Sometime in December 2017, the FBI reviewed a phone call made by an inmate in Terre Haute,

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

4

Jasper Knabb, to his girlfriend. Exh. I, January 16, 2018 FD-1036 Import Form.[1] Knabb told her that

Mr. Ferizi had "confessed to him that he was cashing out from his crimes and using his family

members to do it." *Id.* at AF-000089. On January 18, 2018, FBI Special Agent Dustin Reid from FBI

Jacksonville requested the BOP produce recordings of all emails and phone calls made by Mr. Ferizi

in custody, and a taint team was established to filter out any attorney-client communications. Exh. J,

January 29, 2018 FD-1057 Electronic Communication at AF-000113-14. A few days later, on

January 23, 2018, FBI Jacksonville requested FBI Indianapolis interview Knabb, who had

"describe[d] ongoing criminal activity involving" Mr. Ferizi while the two were housed at Terre

Haute. Exh. K, January 23, 2018 FD-1057 Electronic Communication at AF-000108.

　　　　For the next several months, the BOP sent the FBI Mr. Ferizi's emails and recorded phone

calls. By June 20, 2018, Special Agent Reid completed a review of emails sent by Mr. Ferizi while in

Terre Haute between June and November 2017. Exh. L, June 20, 2018 FD-1057 Electronic

Communication. One of the emails flagged by Reid was a message Mr. Ferizi sent to "his brother…to

keep Ferizi's email access alive and not expiring for unknown purposes." *Id*. at AF-000128. By

August 2018, Reid completed a review of phone calls made by Mr. Ferizi while he was in prison.

Exh. M, October 3, 2018 FD-1057 Electronic Communication. Reid described a phone call made by

Mr. Ferizi on February 26, 2018 to a man determined to be Mr. Ferizi's brother…who told Mr. Ferizi

"'we have been able to open your email' and 'there were some emails (that) were deleted. Some from

a long time, say a month or so were deleted." *Id.* at AF-000094. The conversation made clear that Mr.

Ferizi's brother had downloaded the arditferizi95@gmail.com account data, as he told Mr. Ferizi

"'even in the accounts that we were able to enter, we saw that someone has accessed them,'" noted

"something else has taken all your data," "claimed that Ferizi's email account had received emails

from the Czech Republic, had an unsuccessful sign-in on February 19th, and had been successfully

accessed from the United States and Ireland," and "stated 'whatever contacts you might have had, all

the contacts are deleted.'" *Id.*

　　　　By the end of 2018, however, nothing came of the investigation. It does not appear that Knabb

---

[1] Knabb was serving a 253-month sentence after he pleaded guilty to conspiracy to commit securities fraud and securities fraud in Northern District of California case 4:11-CR-00009-JSW.

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

5

1   was ever interviewed by the FBI. No further investigation was conducted into Mr. Ferizi and no

2   further recorded phone calls or emails were obtained or reviewed by the FBI. Nor was any criminal

3   case filed against Mr. Ferizi in any federal district court.

4   **C.    Mr. Ferizi is granted compassionate release in 2020.**

5          On August 7, 2020, Mr. Ferizi filed a pro se motion for a sentencing modification—

6   colloquially known as "compassionate release"—under 18 U.S.C. § 3582(c). Exh. N, Pro Se

7   Emergency Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A). His request was

8   based on the fact his underlying health conditions—including obesity and asthma—put him at risk of

9   death or serious illness if he caught COVID-19 while in prison. He requested that he be resentenced

10  to time served and sent to ICE custody where he would be immediately deported.

11         The government opposed the request. Exh. O, United States' Response in Opposition to

12  Defendant's Motion for Compassionate Release. While it agreed Mr. Ferizi "established

13  'extraordinary and compelling reasons to warrant'" a sentencing reduction "because his medical

14  conditions increase his risk of suffering serious complications from COVID-19," it nonetheless

15  opposed the request because they believed removing him to Kosovo was not "a practical or viable

16  alternative to the resources available to him at the BOP facility where he is currently housed." *Id.* at

17  12. It also claimed that Mr. Ferizi's "crimes and the risk of recidivism in a country outside the reach

18  of U.S. law enforcement provide the strongest argument against early termination of his sentence."

19  *Id.* at 15. It acknowledged the BOP had determined Mr. Ferizi had a "low risk" PATTERN score and

20  noted "Ferizi has largely been successful during his sentence so far…complet[ing] a substantial

21  number of programs, including drug treatment, though he has also committed two disciplinary

22  infractions." *Id.* at 20. Critically, the government never argued that Mr. Ferizi engaged in any

23  criminal activity while in custody, made no reference to any communications he had while in prison,

24  including with his brother, and said nothing about Knabb's allegation that Mr. Ferizi had engaged in

25  criminal conduct while at Terre Haute.

26         The district court held a telephonic hearing on the motion on October 6, 2020 and denied Mr.

27  Ferizi's request from the bench. Exh. A, Dkt. 98-99.

28         Mr. Ferizi filed a renewed request for compassionate release on November 11, 2020. Exh. P,

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

6

Renewed Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). He noted that the facility he was housed in, FCI Gilmer, had a surge of COVID-19 cases coinciding with a large surge of new cases across the country. *Id.* at 3. He proposed a more detailed release plan, noted Kosovo would accept him, and argued the 18 U.S.C. § 3553(a) factors supported release. *Id.* at 5-7.

Again, the government opposed, reiterating its position that "the seriousness of the defendant's offense, the relatively small percentage of his sentence the defendant has so far served, and the inability of the Court to ensure the safety of the community were he to reoffend" weighed against granting compassionate release. Exh. Q, United States' Response in Opposition to Defendant's Renewed Motion for Compassionate Release at 5. And again, it said nothing about Knabb's allegation that Mr. Ferizi had engaged in new criminal conduct while housed in the BOP, and never referenced Mr. Ferizi's communications with his brother.

On December 3, 2020, Judge Brinkema granted Mr. Ferizi compassionate release. Exh. R, December 3, 2020 Order. She found Mr. Ferizi's asthma and obesity made him particularly susceptible to COVID-19 and was satisfied that Mr. Ferizi would be deported to Kosovo if released from the BOP. *Id.* at 4. As for the government's concerns about the seriousness of Mr. Ferizi's conduct, she explained "there is no doubt that defendant committed a serious offense" but "nevertheless, even defendants who have committed very serious offenses can be appropriately released from custody on supervision." *Id.* at 6-7. She elaborated, "defendant's offense did not involve violence, and none of the individuals whose information he gave to ISIL suffered physical harm;" she credited Mr. Ferizi's explanation that he "'totally and completely oppose[s] ISIL and all that it stands for,' and that immaturity rather than ideology was the primary motivator of his conduct;" she noted Mr. Ferizi had "no significant criminal history before his arrest for his present offenses, which he committed when he was only 19 years old," "has incurred only minor infractions while in BOP custody, all of which were more than two years ago," "has completed educational courses and drug treatment programs, and has been rated by BOP staff as a 'low' risk for recidivism." *Id.* at 7-8. The court ordered Mr. Ferizi's 240-month sentence reduced to time served and ordered him released "into the custody of ICE to be promptly deported to Kosovo." *Id.* at 8-9.

Eleven days later, on December 14, 2020, the government requested Judge Brinkema stay the release order. Exh. S, Motion to Stay Release Order. It emphasized the facts of Mr. Ferizi's prior conviction and expressed "public safety concerns" because "a defendant convicted of hacking on behalf of ISIS will be released to a foreign country where he will be free to resume his exploits with impunity." *Id.* at 3. It also argued "absent a stay, the government will likely lose its ability to secure the defendant's incarceration should it prevail on appeal." *Id.* at 4. Once again, the government never raised any of Knabb's allegations or referenced Mr. Ferizi's communications with his brother.

Judge Brinkema denied the stay request on December 16, 2020. Exh. T, December 16, 2020 Order. She noted "the government reiterates its earlier argument that release is not appropriate in light of 'the serious nature of the defendant's offense and the harm caused to the victims in this case.'" *Id.* at 2. But she already "considered the facts underlying defendant's convictions" and noted that Mr. Ferizi "has disclaimed any affiliation or sympathy with ISIS, that he was 19 years old at the time of the offense, that he had no significant criminal history, and that he has had no significant disciplinary problems during the five years he has spent in custody." *Id.* She found "the government's sense of urgency is undermined by the fact that it waited eleven days before requesting a stay or noticing an appeal of the [compassionate release] Order." *Id.* at 3. Finally, she noted the "government does not explain" why Mr. Ferizi's "premature release raises obvious public safety concerns," and noted again "the absence of specific characteristics that make defendant a likely threat to the public," as well as the fact Mr. Ferizi "has been rated by BOP staff as a 'low' risk for recidivism." *Id.* at 3-4.

That same day, December 16, 2020, the government filed a motion asking the Fourth Circuit to stay Judge Brinkema's order. Exh. U, United States' Motion to Stay Release. As it did before Judge Brinkema, the government focused on the facts underlying Mr. Ferizi's offense as well as "the unique recidivism challenges" given Mr. Ferizi's conviction. *Id.* at 19. It argued without a stay, "the government will likely lose its ability to secure Ferizi's incarceration should it prevail on appeal." *Id.* at 20. Again, it never discussed Knabb's allegation, or the documented calls and emails Mr. Ferizi had with his brother. On December 18, 2020, the Fourth Circuit denied the government's request for a stay. Exh. V, December 18, 2020 Order.

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

8

**D.    A criminal complaint is filed in 2021 after Mr. Ferizi is granted compassionate release.**

On January 11, 2021, Agent Reid of FBI Jacksonville swore out a criminal complaint in the Northern District of California, accusing Mr. Ferizi of wire fraud and aggravated identity theft. *See* Dkt. 1, Complaint. In his affidavit, he explained the FBI had received information from Knabb in January 2018 alleging that Mr. Ferizi engaged in criminal activity while at FCI Terre Haute. *Id.* at ¶ 12. Reid noted Knabb had been interviewed by the FBI on December 17, 2020. *Id.* at ¶ 14. The complaint elaborated that the FBI had reviewed emails Mr. Ferizi sent to his brother in October 2017, asking his brother to "keep my e-mail alive and not expiring," for arditferizi95@gmail.com. *Id.* at ¶ 15. The affidavit also disclosed that the FBI had listened to a monitored phone call where Mr. Ferizi's brother explained he had accessed the Google account, and that it had reviewed search warrant returns in January 2021 that indicated on "February 25, 2018, files were prepared to be downloaded from the arditferizi95@gmail.com email account that included large databases of stolen PII." *Id.* at ¶¶ 16, 17.

The affidavit also *omitted* significant information. First, and foremost, it failed to note that Knabb had been repeatedly deemed not credible. At Knabb's sentencing hearing, the Honorable Jeffrey S. White remarked Knabb's "instinct is always to hide, to sneak, to cheat, to manipulate others." *See* Exh. W, *United States v. Knabb*, 4:11-CR-00009-JSW, Dkt. 77, Sentencing Transcript at 113:10-12. That stemmed not just from Mr. Knabb's actions in the underlying criminal case, but also Judge White's determination that Knabb "has not been candid with [the] probation officer" and "I don't think he's been candid with the lawyers either." *Id.* at 113:3-5.

The complaint admitted that Knabb had alleged "a BOP staff member brought into the prison a white Apple iPhone 4 for Ferizi to use in furtherance of the criminal conspiracy," and that a BOP staff member had advised "he had not seen Ferizi involved in any criminal activity…did not see Ferizi with a cell phone and had no knowledge of Ferizi ever having a cell phone." Complaint at ¶ 35. Reid failed to note that a BOP Special Investigative Agent investigated Knabb's accusation and "found no evidence that [the BOP employee] had brought a cell phone into the prison." Exh. X, December 29, 2020 FD-302 Report of Investigation at AF-000072. Nor did Reid mention that Knabb "was angry" at the BOP employee "for some reason and told prison investigators that [the BOP

employee] was bringing in a cell phone to Ferizi," which he "believed Knabb said…to make himself look good." Exh. Y, December 29, 2020 FD-302 Report of Investigation at AF-000074.

The complaint also failed to acknowledge that the FBI had all the information it used to support its accusation against Mr. Ferizi long before 2020. Specifically, it failed to acknowledge it had known about the stolen data in Mr. Ferizi's Google Drive since January 2016, the FBI had logged into the Google account in August 2016, knew of Mr. Ferizi's October 2017 email to his brother since June 2018, and knew his brother had accessed Mr. Ferizi's email account and downloaded its data since August 2018. Nor did the affidavit mention that FBI Jacksonville had requested FBI Indianapolis interview Knabb in 2018.

On January 21, 2021, a five count indictment was filed, charging Mr. Ferizi with conspiracy to commit wire fraud, 18 U.S.C. § 1349, wire fraud, 18 U.S.C. § 1343, possession of an unauthorized access device, 18 U.S.C. § 1029(a)(3), transfer of stolen identification documents, 18 U.S.C. § 1028(a)(2), and aggravated identity theft, 18 U.S.C. § 1028A. Dkt. 1, Indictment. The indictment alleged "FERIZI's Google Drive contained databases of stolen and unauthorized personally identifiable information and online account access data." Indictment at ¶ 5. According to the indictment, between 2017 and 2018, Mr. Ferizi allegedly gave his brother "account information and passwords in order to allow [his brother] to access previously stolen data and information, including personally identifying information for other persons…for the purpose of further use of the data to commit fraud," and to "use the information of real individuals in order to establish access to credit in the names of those real individuals or fraudulently transfer funds from their online accounts, such as PayPal." *Id.* at ¶ 8.

Mr. Ferizi was arrested in the Middle District of Pennsylvania sometime in January 2021, where he had been held in immigration custody. He waived his right to a removal hearing in that district quickly after his initial appearance and was ordered detained. It took three months for Mr. Ferizi to be transported to the Northern District of California, and he did not make his initial appearance in this district until April 13, 2021. *See* Dkt. 7.

On the same day of his initial appearance in the Northern District, Mr. Ferizi submitted a lengthy discovery request through counsel to the government under Federal Rule of Criminal

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

10

Procedure 16. The government produced approximately 36,000 pages of discovery on June 10, 2021.

*See* Dkt. 21.

On November 16, 2021, Mr. Ferizi—through counsel—submitted a detailed supplemental

discovery request pursuant to Rule 16 requesting, among other things,

1. All reports, correspondence, emails, text messages, and handwritten notes concerning the U.S. Attorney's Office for the Eastern District of Virginia authorizing the FBI to access Mr. Ferizi's email and other online accounts on December 29, 2020; *see* AF-0000077;

2. Copies of all reports, memorandums, and correspondence, whether typed or handwritten, between the U.S. Department of Justice's Computer Crime and Intellectual Property Section, U.S. Attorney's Offices for the Northern District of California, the Eastern District of Virginia, the Middle District of Florida, and the Southern District of Indiana, and FBI field offices in San Francisco, Washington, Jacksonville, and Indianapolis, concerning

   a. Mr. Ferizi's compassionate release request in the Eastern District of Virginia;

   b. the government's efforts to abide by the Court order requiring Mr. Ferizi "be promptly deported to Kosovo" following the completion of his 14 day BOP quarantine; *see United States v. Ferizi*, E.D.V.A. 1:16-CR-00042-LMB, Dkt. 105, Order Granting Renewed Motion for Compassionate Release at 9; and

   c. the investigation, arrest, and prosecution of Mr. Ferizi in the Northern District of California in this case; this request includes, but is not limited to, a copy of any prosecution memorandum prepared by the Department of Justice, any U.S. Attorney's Office, the FBI, or any other law enforcement agency connected with this investigation.

Exh. Z, Supplemental Discovery Request at 2-3. As of this filing, the government has not

produced any of these materials.[2] Mr. Ferizi's jury trial is scheduled to begin May 2, 2022.

On November 16, 2021, the Fourth Circuit vacated Judge Brinkema's compassionate release

order and remanded. *See United States v. Ferizi*, 2021 WL 5320860 (4th Cir. Nov. 16, 2021) (per

curiam). It noted Mr. Ferizi was charged in a criminal complaint after he had been granted

---

[2] On November 17, 2021, this Court issued a proposed scheduling order that directed the government to produce all Rule 16 discovery by December 31, 2021. *See* Dkt. 29. Neither party objected to that proposed scheduling order by the deadline set out in the order. On February 8, 2022, this Court approved an amended scheduling order negotiated by the parties after new government counsel entered an appearance in the case on January 6, 2022. *See* Dkt. 37. Under the new scheduling order, all Rule 16 discovery must be produced by the government by March 1, 2022. *Id.* at 2. Mr. Ferizi is not now claiming the government's nondisclosure of this material violates Rule 16 or the Court's scheduling order. But as detailed below, this material is clearly "material to preparing the defense" under Rule 16(a)(1)(E)(i) and must therefore be produced by March 1, 2022.

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

11

1    compassionate release, and the government "did not disclose the existence of any investigation into

2    new criminal conduct in its brief to the district court," and "nothing in the record before the district

3    court otherwise indicated that Appellee may have engaged in such conduct." 2021 WL 5320860, at

4    *1. It remanded for the district court to "consider in the first instance how the new charges, or other

5    relevant evidence revealed since the district court's order of release, impact the discretionary §

6    3553(a) analysis for compassionate release." *Id.*

7        On remand, Judge Brinkema directed the parties to file supplemental briefs on the impact of

8    this criminal case on the compassionate release order; all briefing was completed on December 23,

9    2021. Exh. A, Dkt. 124. As of this filing, she has yet to issue any further rulings on Mr. Ferizi's

10   compassionate release request.

11                                          **ARGUMENT**

12       The government violates a criminal defendant's Fifth Amendment's right to due process when

13   it brings criminal charges "to penalize [him] for exercising a protected statutory or constitutional

14   right." *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). "After all, penalizing a person for

15   doing what the law plainly allows him to do 'is a due process violation of the most basic sort.'"

16   *United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980) (quoting *Bordenkircher v. Hayes*, 434 U.S.

17   357, 363 (1978)). It is "the appearance of vindictiveness, rather than vindictiveness in fact, which

18   controls." *United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978). And "it is the Government's

19   attempt or threat to 'up the ante' by bringing new or more serious charges in response to the exercise

20   of protected rights that violates the due process guarantee." *United States v. Robison*, 644 F.2d 1270,

21   1273 (9th Cir. 1981).

22       Vindictiveness is shown by "producing direct evidence of the prosecutor's punitive

23   motivation;" alternatively, a defendant "is entitled to a presumption of vindictiveness" if he can show

24   "charges 'were filed because [he] exercised a statutory, procedural, or constitutional right in

25   circumstances that give rise to an appearance of vindictiveness.'" *Jenkins*, 504 F.3d at 699 (quoting

26   *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982)). No "bad faith" or malice is

27   required; instead a defendant need only show "a *reasonable likelihood* that the government would not

28   have brought" the charge but for the defendant's exercise of a legal right. *Jenkins*, 504 F.3d at 700

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

12

(emphasis in original). The "filing of the initial indictment can provide the basis for a charge of vindictive prosecution" when the defendant shows "vindictiveness on the part of those who made the charging decision." *United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir. 1984) (quoting *United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1981) ("mere filing of an indictment can support a charge of vindictive prosecution.")).

Mr. Ferizi easily meets this standard, and the burden thus shifts to the government to rebut the presumption. The Court should direct the government to produce discovery and order an evidentiary hearing on the motion.

**A.    Charging Mr. Ferizi after he was granted compassionate release is vindictive.**

The chronology is simple: the FBI knew about the contents of the Google Drive account since 2016, knew of Knabb's allegation since January 2018 and, by the summer of 2018, knew that Mr. Ferizi had asked his brother to keep his email active and that his brother had downloaded the content of his Google account. Despite knowing all this information by August 2018, the government pursued no investigation into Mr. Ferizi and made no effort to inform Judge Brinkema of any of this while it opposed Mr. Ferizi's compassionate release request, or the Fourth Circuit when it sought a stay of her order.

It was not until December 10, 2020—a week after Mr. Ferizi was granted compassionate release and ordered to be promptly deported—that it took an interest in Knabb's accusation, interviewing him and other witnesses, issuing subpoenas and search warrants, and in less than a month later, filing the criminal complaint that removed Mr. Ferizi from ICE custody and initiated this federal criminal prosecution.

The government's knowledge of the facts—and indeed, its decision to abandon its investigation in 2018—leads to the inescapable conclusion that the government's prosecution of Mr. Ferizi is vindictive. Indeed, the Ninth Circuit has repeatedly found a prosecution vindictive when it is based on "facts…known to the prosecution before it instituted the original complaint." *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1370 (9th Cir. 1976).

For example, in *Jenkins* a defendant was arrested in January 2005 entering the United States from Mexico after marijuana was found hidden in her car. 504 F.3d at 698. She told agents she did

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

13

1    not know there was marijuana in the car and believed she was smuggling undocumented people

2    across the border. *Id.* The government knew she had been arrested on two prior occasions in October

3    2004 for smuggling undocumented individuals. She was charged with importing marijuana and at

4    trial, testified that she did not know she was smuggling marijuana and instead believed she was

5    smuggling people. *Id.* As the jury was deliberating, the government filed a criminal complaint

6    charging her with human smuggling based on the prior arrest in October 2004 and eventually indicted

7    her. *Id.* The district court granted her motion to dismiss the human smuggling indictment as

8    vindictive, and the Ninth Circuit affirmed. It found an appearance of vindictiveness, explaining the

9    government "deci[ded] to press charges only after Jenkins asserted a reasonably credible defense to

10    the marijuana importation charges." *Id.* at 700. Critically, it found "the government had more than

11    enough evidence to proceed with the [human] smuggling charges prior to Jenkins's decision to

12    testify" *Id.* It rejected the government's argument that it had a stronger human smuggling case after

13    her testimony because "it was not necessary to wait to file charges until Jenkins took the witness

14    stand and confessed under oath." *Id.* at 701.

15          Similarly in *Groves*, a defendant was being investigated for marijuana trafficking. 571 F.2d at

16    451. During that investigation, he was found in possession of cocaine and arrested in January 1976

17    and charged by complaint with possessing cocaine. *Id.* He agreed to cooperate with the government

18    and after his initial appearance on the cocaine charge, met with investigators and confessed to his

19    involvement in the marijuana trafficking operation. It was understood that in exchange for his

20    cooperation, he would not be charged with marijuana trafficking and the cocaine case would be

21    dismissed. *Id.* at 451-52. The following day, the defendant told investigators he was too scared to

22    testify in court and did not cooperate any further. After ten months, in October 1976 the defendant

23    moved to dismiss the cocaine complaint because he had not been formally charged by Indictment or

24    Information within 30 days as required by the Speedy Trial Act. *Id.* The government dismissed the

25    complaint and, a week later, the defendant was indicted on marijuana trafficking and conspiracy

26    charges. *Id.* at 452. The Ninth Circuit found the prosecution vindictive, noting the government filed

27    the marijuana charges only after the defendant moved to dismiss the cocaine case under the Speedy

28    Trial Act. *Id.* at 453. It rejected the government's argument that the indictment was based on the

1  defendant's failure to cooperate because "with full knowledge of the appellant's violation of the

2  [marijuana] laws and the extent of his cooperation in January, the government did not see fit to seek

3  the indictment until shortly after [he] had asserted his statutory rights." *Id.*

4      In *United States v. DeMarco*, 550 F.2d 1224 (9th Cir. 1977), the defendant was charged with a

5  variety of tax crimes in the District of Columbia. 550 F.2d at 1226. He moved to sever his case from

6  his co-defendant, and to transfer his case to California, which was granted. After the case was

7  transferred, the government told defense counsel that it would "consider more counts against him" if

8  the case was transferred and that it "would 'restructure' the case against him if it came to California."

9  *Id.* Once the case was transferred, the government filed a second indictment based on facts "known to

10  the Government long before the first indictment was returned." *Id.* The Ninth Circuit affirmed the

11  district court's finding that the government "deliberately used the threat of a new indictment in

12  California to deter the defendant from exercising his statutory (venue) rights." *Id.* It elaborated "the

13  only 'major change' was severance resulting from DeMarco's exercise of his statutory venue right."

14  *Id.*

15      Mr. Ferizi's case is identical. The government was aware of Knabb's allegation that Mr. Ferizi

16  had engaged in criminal conduct while at Terre Haute and went so far as to investigate the accusations,

17  review his emails, and listen to his phone calls. It knew by the summer of 2018 the facts used to

18  support the criminal complaint, specifically that there was stolen data on Mr. Ferizi's Google Drive

19  account, that he had asked his brother to keep the account active, and that his brother had done so. It

20  not only chose not to pursue the investigation any further after the summer of 2018 but did not raise

21  any of the allegations while contesting Mr. Ferizi's compassionate release request in 2020. It was

22  only after Mr. Ferizi had been granted compassionate release that the government pursued the

23  allegations, ultimately resulting in Agent Reid—the agent who had investigated Knabb's allegations

24  in 2018—swearing out an affidavit for a criminal complaint in January 2021.

25      Given these facts, there is no question that Mr. Ferizi was charged in this case because he

26  exercised his statutory right to seek compassionate release. Mr. Ferizi is thus entitled to a

27  presumption of vindictiveness.

28

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

15

**B.**    **The burden is on the government to rebut the presumption of vindictiveness.**

Once a presumption of vindictiveness is shown, the burden shifts to the government to show "'objective evidence justifying the prosecutor's action,'" who must "show that the additional charges 'did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness.'" *Jenkins*, 504 F.3d at 701 (quoting *Gallegos-Curiel*, 681 F.2d at 1168) (brackets in original). For example, the burden can be overcome if the government can show "that it was impossible to proceed…at the outset," *United States v. Goodwin*, 457 U.S. 368, 376 n. 8 (1982), or if the "prosecution, through no fault of its own, was unaware of facts required for an indictment" for the later charge. *Ruesga-Martinez*, 534 F.2d at 1370, n. 4.

As detailed above, the government cannot carry this burden. It was aware of the existence of the contents of the Google Drive since 2016, and aware of the allegations against, and specific communications made by, Mr. Ferizi since 2018. Nothing prevented the government from obtaining search warrants and subpoenas or bringing a charge against Mr. Ferizi earlier. Indeed, FBI Jacksonville requested FBI Indianapolis interview Knabb in 2018 but never pursued the matter any further until December 2020, when the FBI interviewed Knabb after Mr. Ferizi had been granted compassionate release and both Judge Brinkema and the Fourth Circuit had denied the government a stay.

The fact the government abandoned its investigation and never raised any of these issues before Judge Brinkema not only shows the vindictiveness of this prosecution, but suggests the government recognized the weakness of its case. Because the government cannot prove this prosecution is not vindictive, the indictment should be dismissed.

**C.**    **The government must produce documents relevant to resolving this motion.**

Again, to overcome the presumption of vindictiveness, the government must present "'objective evidence justifying the prosecutor's action.'" *Jenkins*, 504 F.3d at 701 (quoting *Gallegos-Curiel*, 681 F.2d at 1168). Self-serving, conclusory arguments raised in the government's opposition will not suffice.

Mr. Ferizi previously requested "objective evidence" that would shed light on the government's

DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION AND REQUEST FOR EVIDENTIARY HEARING
*United States v. Ferizi*, 3:21-CR-00027-WHA

16

1   actions and motivations, including

2       1.   All reports, correspondence, emails, text messages, and handwritten notes
3          concerning the U.S. Attorney's Office for the Eastern District of Virginia
           authorizing the FBI to access Mr. Ferizi's email and other online accounts on
4          December 29, 2020; *see* AF-0000077;

5       2.   Copies of all reports, memorandums, and correspondence, whether typed or
           handwritten, between the U.S. Department of Justice's Computer Crime and
6          Intellectual Property Section, U.S. Attorney's Offices for the Northern District of
           California, the Eastern District of Virginia, the Middle District of Florida, and the
7          Southern District of Indiana, and FBI field offices in San Francisco, Washington,
           Jacksonville, and Indianapolis, concerning

8         a.   Mr. Ferizi's compassionate release request in the Eastern District of Virginia;

9         b.   the government's efforts to abide by the Court order requiring Mr. Ferizi "be
10          promptly deported to Kosovo" following the completion of his 14 day BOP
            quarantine; *see United States v. Ferizi*, E.D.V.A. 1:16-CR-00042-LMB, Dkt.
11          105, Order Granting Renewed Motion for Compassionate Release at 9; and

12        c.   the investigation, arrest, and prosecution of Mr. Ferizi in the Northern District of
            California in this case; this request includes, but is not limited to, a copy of any
13          prosecution memorandum prepared by the Department of Justice, any U.S.
            Attorney's Office, the FBI, or any other law enforcement agency connected with
14          this investigation.

15  Exh. Z at 2-3. As of this filing, the government has not produced any of this material. Not only

16  should this material be produced to resolve the motion, but Mr. Ferizi is *entitled* to the material under

17  Federal Rule of Criminal Procedure 16.

18       Rule 16 "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603

19  F.3d 747, 752 (9th Cir. 2010). "Upon a defendant's request, the government must permit the

20  defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible

21  objects, buildings or places, or copies or portions of any of these items, if the item is within the

22  government's possession, custody, or control and…the item is *material to preparing the defense*."

23  Fed. R. Crim. P. 16(a)(1)(E)(i) (emphasis added).

24       For Rule 16, "materiality is a low threshold; it is satisfied so long as the information…would

25  have helped to prepare a defense." *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016)

26  (quotations and citations omitted). "The test is not whether the discovery is admissible at trial, but

27  whether the discovery may assist…in formulating a defense, including leading to admissible

28  evidence." *Id.* "Information is material even if it simply causes a defendant to 'completely abandon' a

1  planned defense and 'take an entirely different path.'" *United States v. Hernandez-Meza*, 720 F.3d

2  760, 768 (9th Cir. 2013) (quoting *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013)).

3       The Ninth Circuit has specifically found that Rule 16 requires disclosure of evidence relevant

4  to a pretrial motion, particularly one alleging a constitutional violation. *See Soto-Zuniga*, 837 F.3d at

5  1001 ("Rule 16(a)(1)(E) permits discovery to determine whether evidence in a particular case was

6  obtained in violation of the Constitution"). Rule 16 even requires disclosure of material necessary to

7  cross-examine a government witness at any potential pre-trial evidentiary hearing. *See United States*

8  *v. Cedano-Arellano*, 332 F.3d 568, 570 (9th Cir. 2003) (per curiam) (Rule 16 required disclosure of

9  evidence concerning drug sniffing dog which was "very important…to conduct an effective cross-

10 examination of the dog's handler" at pretrial evidentiary hearing on motion to suppress). A

11 defendant's "interest in government materials that are pertinent to his defense take precedence" over

12 the sensitive nature of the documents, including government documents. *Soto-Zuniga*, 837 F.3d at

13 1003.

14      The requested materials are "objective evidence" of the government's motivation for bringing

15 this criminal prosecution only after Mr. Ferizi was granted compassionate release. This Court should

16 thus order the government to produce these materials.

17 **D.    At a minimum, this Court should order an evidentiary hearing.**

18      Mr. Ferizi maintains the record before the Court demonstrates this prosecution is vindictive and

19 the indictment should thus be dismissed. But as noted above, the burden is on the government to

20 provide "objective evidence" about its motivations for charging Mr. Ferizi only after he had been

21 granted compassionate release. If the Court find there are contested issues of fact, then it should hold

22 an evidentiary hearing. The Ninth Circuit requires "the district court to conduct an evidentiary

23 hearing when the moving papers filed in connection with a pre-trial…motion show that there are

24 contested issues of fact." *United States v. Mejia*, 69 F.3d 309, 318 (9th Cir. 1995).

25      Mr. Ferizi thus requests the Court hold an evidentiary hearing on this motion.

26

27

28

1

## **CONCLUSION**

For the reasons stated above, Mr. Ferizi requests the Court dismiss the indictment. At a minimum, the Court should order an evidentiary hearing to resolve the motion.


Dated:     February 15, 2022                    Respectfully submitted,

MOEEL LAH FAKHOURY LLP


Hanni M. Fakhoury
Attorneys for Ardit Ferizi