# EXHIBIT P

**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | Docket No. 1:16-CR-00042 |
| ) | |
| ARDIT FERIZI, ) | |
| Defendant. ) | |

### RENEWED EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO
### 18 U.S.C. § 3582(c)(1)(A)

Ardit Ferizi hereby renews his Motion for Compassionate release due to the outbreak of COVID-19 at Gilmer FCI, where he is now incarcerated, and because he is indisputably at high risk for serious illness should he contract the virus. Indeed, as this Court noted in the hearing on Mr. Ferizi's initial motion, Mr. Ferizi's asthma and obesity "put him at higher risk of getting seriously ill should he become infected with the virus,"[1] and the government has conceded that due to his medical conditions, Mr. Ferizi has established compelling and extraordinary and compelling circumstances for purposes of 18 U.S.C. § 3582. *See id.*; Doc. No. 95 (Gov't Resp. to First Motion for Compassionate Release) at 12. In light of the alarming and rapid spread of the virus at Gilmer FCI, it is clear that <u>now</u> is the time is to grant Mr. Ferizi's motion and safely return him to his family in Kosovo, who stand ready to provide him all the support he needs.

---

[1] Transcript of hearing of Mr. Ferizi's first motion for compassionate release (Hrg. Trx.) p. 4, lines 5-10.

1

## Background

Mr. Ferizi is serving a 240 month sentence for Providing Material Support to a Terrorist Organization, in violation of 18 U.S.C. § 2339B and one count of Unauthorized Computer Access in violation of 18 U.S.C. § 1030 (a)(2)(C). Mr. Ferizi was a 19 year old college student when he committed this offense – sharing information he obtained from hacking into a retail database with someone who then posted the information in a threatening message. Mr. Ferizi did not post the message nor was he ever a member of ISIL. Over the past almost 6 years—spent first in a Malaysian prison and next winding his way through the U.S. prison system—Mr. Ferizi has matured, stabilized, and outgrown the juvenile impulses that caused him to commit his offense. Likewise, he has been sufficiently deterred from ever engaging in this type of conduct again. His inmate record makes abundantly clear the progress he has made. As the government itself acknowledged, he "has largely been successful during his sentence so far" and he has "completed a substantial number of programs, including drug treatment. . . " Doc. No. 95, Gov't Resp. at 20.

On August 7, 2020, Mr. Ferizi filed a *pro se* motion for compassionate release, Doc. No. 81, which undersigned counsel thereafter supplemented. Doc. No. 89 (Supplemental Memorandum in Support of Compassionate Release). In its response, the government conceded that Mr. Ferizi's medical conditions qualify as extraordinary and compelling circumstances, but nonetheless opposed his release. Doc. No. 95. On October 6, 2020, the Court held a telephonic hearing on Mr. Ferizi's motion. The Court agreed that Mr. Ferizi's medical conditions render him high risk

2

for COVID-19. However, at that time, Mr. Ferizi was incarcerated at USP Lee and was scheduled to be transferred to Gilmer FCI the very next day. On October 6, 2020, the Bureau of Prisons was reporting 3 known cases of coronavirus at Gilmer FCI, though it had reported 10 cases just the day before, October 5, 2020. Hrg. Trx. at 8, lines 7-11. Since early October, that number has steadily climbed and Gilmer FCI reported that **51 inmates** and one staff member currently had the virus as of November 9, 2020. A day later, on November 10, that number jumped to **76 inmates** positive for the virus, indicating that the October 6 cases resulted in an outbreak that is rapidly spreading around the facility. Moreover, this number likely underrepresents the actual count because Gilmer FCI is not conducting widespread testing. Mr. Ferizi reports that he has been told by correctional staff that there are likely over 100 cases of coronavirus in the facility. Meanwhile, coronavirus cases are currently surging around the country, with 100,000 new cases every day for seven days and surpassing 10 million cases - far more than any other country.[2] And while there has been promising news of a vaccine on the horizon[3] there is reason to believe that the United States is a long way from widely distributing an effective vaccine.[4]

---

[2] *Expert predicts US could soon hit 200,000 daily coronavirus cases as the country tops 10 million infections*, CNN Health (November 10, 2020) https://www.cnn.com/2020/11/10/health/us-coronavirus-tuesday/index.html.
[3] Herper, Matthew, *Covid-19 vaccine from Pfizer and BioNTech is strongly effective, early data from large trial indicate* (Nov. 9, 2020), https://www.statnews.com/2020/11/09/covid-19-vaccine-from-pfizer-and-biontech-is-strongly-effective-early-data-from-large-trial-indicate/.
[4] The CDC has indicated that while a vaccine may become available this year, "there may not be enough doses for all adults" until "later in 2021." Centers for Disease Control & Prevention, *Frequently Asked Questions about COVID-19*

3

Furthermore, despite initial clinical results, "key information about the vaccine is not yet available."[5] Even if this vaccine proves safe and effective, incarcerated populations remain at significantly higher risk than the general population. Although the Department of Health and Human Services has announced its strategy for distributing a COVID-19 vaccine, this strategy does not address incarcerated populations in jails and prisons.[6] Thus, compassionate release from BOP custody is the only realistic way that Mr. Ferizi can protect himself, especially because the virus is surging in his prison as counsel writes this motion.

In denying Mr. Ferizi's first motion for compassionate release, the Court invited counsel to file a renewed motion should counsel learn information pertinent to the following: 1) whether Kosovo would accept Mr. Ferizi back into the country, 2) "some sense as to how long [Mr. Ferizi] would be in ICE custody," and 3) the coronavirus rates at Gilmer FCI. Hrg. Trx. at 11, lines 14-23. Undersigned counsel

---

*Vaccination* (last updated Nov. 4, 2020) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html.

[5] Herper, *supra* note 3 ("There is no information yet on whether the vaccine prevents severe cases, the type that can cause hospitalization and death. Nor is there any information yet on whether it prevents people from carrying the virus that causes Covid-19, SARS-CoV-2, without symptoms. Without more information, it's too early to start predicting how much of an impact the vaccine could make, said Michael Osterholm, director of the University of Minnesota's Center for Infectious Diseases Research and Policy.").

[6] The words "prison," "jail," "inmate," and "incarceration" do not appear anywhere in some Department of Health and Human Services strategy documents for disseminating a COVID-19 vaccine, indicating the lack of prioritization for providing vaccines to these populations. Department of Health and Human Services, From the Factory to the Frontlines: *The Operation Warp Speed Strategy for Distributing a COVID-19 Vaccine* (Sept. 16, 2020) https://www.hhs.gov/sites/default/files/strategy-for-distributing-covid-19-vaccine.pdf.

4

now respectfully files this renewed motion for Mr. Ferizi's compassionate release and addresses those issues in turn.

### I. This Motion is timely and Mr. Ferizi has already established extraordinary and compelling circumstances.

As a preliminary matter, this motion is again ripe for this Court's review. Mr. Ferizi submitted a request for compassionate release with the Bureau of Prisons well over 30 days ago and this Court adjudicated his first motion for compassionate release. *See* Doc. 81. Exh. 1 (Requests for Compassionate Release and Responses). Likewise, the Court has found—and the government has conceded— that Mr. Ferizi's medical condition qualify as extraordinary and compelling circumstances under 18 U.S.C. § 3582.

### II. There is no bar to Mr. Ferizi being returned to his home country, Kosovo.

As the Court knows, Mr. Ferizi is a citizen of Kosovo. Following the October 6, 2020 hearing, undersigned counsel contacted the consulate general of Kosovo. In an email response, the consular general stated that "there are no obstacles for our citizens returning home." *See* Exh. 1. Moreover, Mr. Ferizi's family has hired a lawyer in Kosovo who is familiar with the immigration laws. That attorney has advised Mr. Ferizi's mother, Dijana Ferizi, that there is no reason why Mr. Ferizi would not be accepted back into the country following deportation by the United States. The government has not suggested that Mr. Ferizi cannot be returned and with confirmation from the consulate, there is no reason to believe Kosovo has a basis to bar his entry.

5

### III. If the Court grants this Motion, Mr. Ferizi will be transferred to ICE and quickly removed.

If the Court grants his compassionate release, Mr. Ferizi will be transferred to Immigrations and Customs Enforcement (ICE) custody and deported to Kosovo. Currently, ICE is reporting just 2 cases of coronavirus at its Caroline Detention Facility and **0 cases at Immigration Centers of America-Farmville**, the two area facilities where Mr. Ferizi would likely be transferred prior to removal.[7] In the unlikely event that he is transferred to another ICE facility, there are no ICE facilities reporting as many cases as Gilmer FCI. As such, there is little reason to assume that Mr. Ferizi is safer at Gilmer FCI, where there is an ongoing spike in coronavirus cases, than he would be in an ICE facility.

Of course there is no way to predict exactly how many days Mr. Ferizi would remain in ICE custody awaiting deportation to Kosovo. But based upon the experience of other removable detainees, the time in administrative custody would likely not exceed two months. Indeed, statistics compiled by ICE show that in 2019, the average length of stay of a detainee in an ICE facility prior to deportation was 54 days.[8] Moreover, his family have a copy of his birth certificate ready to present, which in counsel's experience, is likely to facilitate his expeditious removal. Even if Mr. Ferizi were to remain in an ICE facility for a month or two, ICE facilities currently have a much lower rate of coronavirus cases than Gilmer FCI. Indeed, the large area

---

[7] COVID-19 ICE Detainee Statistics by Facility available at https://www.ice.gov/coronavirus
[8] U.S. Immigration and Customs Enforcement Fiscal Year 2019 Enforcement and Removal Operations Report, p. 8.

6

facility known as "Farmville" is reporting that it currently has zero cases. Finally, with respect to the Court's question whether his potential "no-fly" status would complicate removal, the government has since confirmed that even if Mr. Ferizi were on a no-fly list,[9] that would not prevent ICE from removing him to Kosovo. This is because the no-fly list operates to bar people from flying *commercial* airlines in and out of the country, but it would not bar ICE from removing Mr. Ferizi.[10] It bears repeating that Mr. Ferizi is already barred from ever returning to the United States and he has no intention of doing so.

### IV. The 3553 (a) factors support Mr. Ferizi's return to Kosovo.

Mr. Ferizi was a teenager when he committed this offense—a teenager suffering from PTSD flowing from the trauma his family experienced in surviving the Serbian war. He was also abusing drugs on a daily basis, which exacerbated his undeveloped, irrational impulses. But Mr. Ferizi was never embedded in a terrorist organization. He never expressed animosity towards the United States. To the contrary, he grew up revering the U.S. for its role in ending the Serbian conflict. If anything, he admired America's dominance on the world stage. To this day, he is grateful for how he has been treated by the American justice system, even though he received a lengthy sentence and despite the fact that his earnest and extensive cooperation did not result in the reduction that he and his family had so fervently hoped for.

---

[9] Hrg. Trx, p. 3, lines 21-22.
[10] *See* https://www.tsa.gov/travel/passenger-support/travel-redress-program

7

Mr. Ferizi's family awaits his return patiently. They will provide him every support he needs to get back on his feet. If returned to Kosovo, Mr. Ferizi would live with his mother and father in their three bedroom family home. Mr. Ferizi's father is an electrical engineer and he and Mrs. Ferizi run a construction company where Ardit could also work if he were to be released. According to Ardit's mother, he could also enroll in school. *See* Exh. 2, Letter of Dijana Ferizi. The family have the resources to retain whatever services are needed to help Mr. Ferizi. The Court correctly observed that Mr. Ferizi has mental health issues. But according to Dr. Aaron who evaluated Mr. Ferizi in advance of his sentencing hearing: "While these difficulties are significant, a number of factors are associated with increased likelihood of success. These include his apparently good prior response to treatment, his adolescent status, and a supportive family. Treatment records suggest that with intervention, Mr. Ferizi showed significant and rapid improvement." Doc. No. 56, Position on Sentencing, Exh. 1, Report of Dr. Aaron (filed under seal). Mr. Ferizi's parents stand ready to provide him with mental health treatment, family support, around the clock monitoring—literally any intervention required to make sure that he will never offend again. Moreover, the Kosovo authorities have already demonstrated that they are able to monitor Mr. Ferizi's computer activity, having assisted in his arrest in Malaysia and extradition to the United States. That said, Mr. Ferizi will not access computers if he is returned home.

    Mr. Ferizi spent over six months in a horrific Malaysian prison. He has spent over five years imprisoned in the United States, thousands of miles from his family

8

during a pandemic that has impacted the United States more than any other country. Due to the pandemic, his conditions of confinement are even more isolating and harsher than ever before, with constant lockdowns and little ability to move about and get outside for fresh air. The harsh conditions caused one district judge to observe, "[T]he Court is aware that defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations, because their time in custody is harsher. Those with pre-existing conditions, like diabetes, are receiving particularly favorable recommendations." *United States v. Armstrong*, No. 18-CR-5108, Dkt. 423, p. 7 (S.D. Cal, July 30, 2020). In another recent case, a district judge granted compassionate release for a young man convicted of conspiracy to kill a blogger on behalf of ISIL, even though he had served less than half of his 15-year sentence. *United States v. Rovinski*, No. 15-CR-10153 (D. Mass. August 13, 2010), Doc. No. 813.

Mr. Ferizi has been amply punished for his non-violent computer offense and he has been sufficiently deterred from ever again offending. He has medical conditions which indisputably place him at high risk of serious illness or even death should he contract coronavirus, which is presently raging inside the walls of his prison. All of these factors, taken together, support granting Mr. Ferizi's second motion for compassionate release and safe return to Kosovo.

## Conclusion

For the reasons stated herein and Mr. Ferizi's *pro se* motion for compassionate release, counsel's supplemental memorandum in support of his *pro se* motion, and

any other reasons that appear to the Court, Mr. Ferizi renews his request that the Court grant his Motion for Compassionate Release.

Respectfully submitted,

Ardit Ferizi
By Counsel

_____/s/_____
Elizabeth Mullin
Virginia Bar Number 86668
Assistant Federal Public Defender

Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0879 (T)
(703) 600-0880 (F)
Elizabeth_Mullin@fd.org (email)

CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2020, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

By Counsel

_____/s/_____
Elizabeth Mullin
Virginia Bar Number 86668

10