# EXHIBIT R

**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ARDIT FERIZI, )<br>)<br>Defendant. ) | 1:16-cr-42 (LMB) |

ORDER

Defendant Ardit Ferizi ("defendant" or "Ferizi"), through counsel, has filed a Renewed Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Renewed Motion"), in which he seeks release from Bureau of Prisons ("BOP") custody due to the outbreak of Covid-19 at Gilmer FCI, where he is incarcerated. Although the United States opposes the motion, for the reasons that follow, the Renewed Motion will be granted.

I.

In September 2014, a spokesperson for the Islamic State of Iraq and the Levant ("ISIL") put out an open call for the personal identifying information of United States military and government employees; in March 2015, ISIL published a "kill list" including the names and addresses of U.S. servicemembers. [Dkt. No. 57] at 4. Around this same time period, defendant—a citizen of Kosovo—was starting out as a student in computer forensics at a Malaysian university. In April 2015, defendant[1] began communicating with a known ISIL member who used the screenname "@Muslim_Sniper_D," providing him with screenshots of credit card information, some of which belonged to U.S. citizens. Id.

---

[1] Defendant used the screenname "@Th3Dir3ctorY," the same moniker used by the leader of a group of Serbian hackers called Kosovo Hacker's Security. That group of hackers claimed to have hacked more than 20,000 websites from around the world. [Dkt. No. 57] at 4.

In June 2015, defendant hacked into the Arizona-based computer servers of an electronics company, obtaining the personal identifying information of about 100,000 customers. [Dkt. No. 57] at 5. Defendant identified about 1,300 customer email addresses that ended in ".gov" or ".mil," created a list of their personally identifying information, and sent the list to his online ISIL contact. Id. On August 11, 2015, ISIL published the list of U.S. government and military employees whom the defendant had identified using their email addresses, along with a headline announcing (falsely) that the U.S. government and military had been hacked by ISIL. The ISIL post warned: "[W]e are in your emails and computer systems, watching and recording your every move, we have your names and addresses" and "soon with the permission of Allah will strike at your necks and your own lands!" Id. at 8.

Investigators followed an electronic trail back to defendant, and he was arrested in Kuala Lumpur, Malaysia on October 12, 2015, when he was nineteen years old. [Dkt. No. 57] at 3. He remained in custody in Malaysia for approximately three months, during which time he was subjected to brutal conditions of confinement, including being doused with buckets of water, burned with cigarettes, and made to sleep naked on a concrete floor without bedding or a toilet. [Dkt. No. 53] at 18. On January 22, 2016, he was extradited to the United States, [Dkt. No. 57] at 3, and on June 15, 2016, he pleaded guilty to one count of providing material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B, and one count of accessing a protected computer without authorization and obtaining information in violation of 18 U.S.C. § 1030(a)(2)(C) and § 1030(c)(2)(B)(ii). [Dkt. No. 68]. He was sentenced to 240 months of incarceration, with credit for the 11 months he had already been in custody.

On August 7, 2020, defendant, acting pro se, filed an Emergency Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A). [Dkt. No. 81]. The Court appointed counsel to

2

represent defendant, and counsel filed a supplement to his pro se motion on August 28, 2020. During oral argument of defendant's first motion, the Court raised three practical considerations not addressed by either party's briefing: how long defendant would likely be in ICE custody before he could be deported to Kosovo; whether he would be able to fly at all given his terrorism-related convictions; and whether, given quarantine restrictions, the government of Kosovo would accept defendant into the country. [Dkt. No. 100] at 3:14-20, 11:14-23. In light of these concerns and the government's argument that there was no way to secure the safety of the community once defendant had left the jurisdiction of the United States, the Court denied defendant's first motion. [Dkt. Nos. 99, 100].

Through counsel, defendant has filed a Renewed Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), specifically addressing the concerns raised by the Court during the hearing on the first motion. [Dkt. No. 101].

II.

To be eligible for compassionate release a defendant must have first "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or 30 days must have passed from the warden's receipt of such an appeal. 18 U.S.C. § 3582(c)(1)(A). Defendant has satisfied this requirement by sending a request for compassionate release to the warden at USP Lewisburg, where he was incarcerated on June 3, 2020, when he first petitioned for release. [Dkt. No. 89-1]; [Dkt. No. 103] at 1 (government agreeing that defendant has exhausted his administrative remedies).

In addition to meeting administrative exhaustion requirements, an inmate seeking to modify a sentence under § 3582(c)(1)(A)(i) must also show "extraordinary and compelling reasons to warrant [ ] a reduction" of the sentence. "In the context of the COVID-19 outbreak,

3

courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020); see also United States v. White, No. 2:07-cr-150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020). When considering whether modification is appropriate, the Court also must consider any applicable 18 U.S.C. § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A).

There is no dispute that defendant has a "particularized susceptibility to the disease." Feiling, 2020 WL 1821457 at *7; White, 2020 WL 1906845 at *1 n.2. Defendant has had a chronic cough since childhood, and was diagnosed with asthma in 2018. [Dkt. No. 89] at 1; [Dkt. No. 94] (sealed BOP medical records). The CDC has acknowledged that "[h]aving moderate-to-severe asthma might increase your risk for severe illness from COVID-19."[2] Defendant's asthma has required treatment with a daily corticosteroid every day for two years. [Dkt. No. 89] at 13. According to the CDC, this medication regimen creates an independent risk for Covid-19: "Many conditions and treatments can cause a person to be immunocompromised or have a weakened immune system. These include ... prolonged use of corticosteroids."[3] Defendant's obesity is yet another factor that places him at greater risk for severe illness—the CDC has warned that having a body mass index greater than 30 is a risk factor,[4] and defendant's BMI has

---

[2] See CDC, People with Certain Medical Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#asthma (last visited Dec. 2, 2020).

[3] CDC, People with Certain Medical Conditions (last visited Dec. 2, 2020).

[4] CDC, People with Certain Medical Conditions (last visited Dec. 2, 2020).

4

fluctuated between 30 and 31 during his incarceration. Considering these multiple risk factors, the government has conceded that "Ferizi is at elevated risk of contracting COVID-19, and as such has established 'extraordinary and compelling circumstances' to justify release for purposes of 18 U.S.C. § 3582." [Dkt. No. 103] at 1.

Defendant has also made a compelling case that there is a "a particularized risk of contracting the disease at his prison facility." Feiling, 2020 WL 1821457 at *7; White, 2020 WL 1906845 at *1 n.2. Shortly after oral argument was heard on defendant's first motion, he was transferred from Lewisburg USP, which currently has no inmates and only five staff members who have tested positive for Covid-19, to Gilmer FCI, where 20 inmates and one staff member are currently shown to be positive for the virus,[5] although as recently as November 25, BOP statistics reflected that there were 122 Gilmer inmates who were positive for the virus. [Dkt. No. 104] at 2. Defendant reports that no widespread testing is underway at the facility, which suggests that the recent drop in reported case numbers may well reflect inadequate testing rather than improved conditions. [Dkt. No. 101] at 3. Although the government argues (without pointing to any supporting evidence) that BOP's safety procedures "have continued to be successful at controlling transmission at many other facilities across the country," it concedes that there is an "ongoing COVID outbreak at FCI Gilmer." [Dkt. No. 103] at 2. The danger posed for defendant by this outbreak, combined with his medical conditions that place him at greater risk for serious illness, are extraordinary and compelling reasons under the meaning of 18 U.S.C. § 3582(c)(1)(A).

Defendant has also satisfactorily responded to the Court's concerns that it might be

---

[5] BOP, Covid-19, available at https://www.bop.gov/coronavirus/index.jsp (last visited Dec. 2, 2020).

5

infeasible to release him if he could not then be promptly deported, either because he might be on a no-fly list or because Kosovo might refuse to accept him. The government has "confirmed with FBI and ICE" that, in spite of defendant's no-fly status, he would be able to board a specifically-designated deportation flight. [Dkt. No. 103] at 2. Defense counsel has also confirmed with the Consulate General of Kosovo in New York City that there will be "no obstacles" for defendant, a citizen of Kosovo, to return home following release. [Dkt. No. 101-1] at 1. The Renewed Motion also adequately addresses the third practical concern raised by the Court during oral argument, that the defendant might face greater risk of contracting Covid-19 while in ICE custody awaiting deportation than he would in a BOP facility. Defendant has demonstrated that the facilities to which he is most likely to be transferred currently have no active cases of the virus.[6] In fact, only three ICE facilities nationwide have more active Covid cases than Gilmer, and all three are in either Texas or Louisiana. Although the government correctly argues that "given the nature of the spread of COVID-19, this could change at any time," [Dkt. No. 103] at 2, the evidence as it currently stands supports a finding that releasing defendant into ICE custody for prompt deportation is a feasible and relatively safe alternative to continued confinement at Gilmer.

The government argues that even if that is the case, "the seriousness of [defendant's] offense and the danger he poses to the community make him an inappropriate candidate for compassionate release."[7] [Dkt. No. 103] at 1. There is no doubt that defendant committed a

---

[6] ICE, Guidance on Covid-19, available at https://www.ice.gov/coronavirus (last visited Dec. 2, 2020).

[7] Defendant devotes much of his reply brief to rebutting the government's assertion that the Court must consider the Bail Reform Act standard of danger to the community at § 3142(g) or certain policy statements by the Sentencing Commission, see [Dkt. No. 103] at 3 (citing 18 U.S.C. § 3582(c)(1)(A)(ii); [Dkt. No. 104] at 3-4; however, the issue is not determinative,

6

serious offense when he provided the personal information of U.S. government and military employees to ISIL, and as the victim impact letter attached to the Presentence Investigation Report demonstrates, his actions were harmful to the individuals whose names appeared on the list posted by ISIL. [Dkt. No. 57-1]. Nevertheless, even defendants who have committed very serious offenses can be appropriately released from custody or supervision where "[t]here is no indication that defendant poses a risk to the public, and reducing defendant's sentence to time served will not diminish the seriousness of his offense or respect for the law." United States v. Lee, 1:95-cr-58, 2020 WL 3422772, at *4 (E.D. Va. June 22, 2020) (reducing sentence of confinement to time served even though defendant had been previously convicted of murder and assault with a deadly weapon); see also [Dkt. No. 104] at 5 (collecting cases).

In this case, defendant's offense did not involve violence, and none of the individuals whose information he gave to ISIL suffered physical harm. Defendant has explained that he "totally and completely oppose[s] ISIL and all that it stands for," and that immaturity rather than ideology was the primary motivator of his conduct: "When I gave the information, I was mostly focused on trying to show off my hacking skills to people I had met online. I deeply regret my actions and I accept the consequences of what I have done." [Dkt. No. 57] at 10. Defendant had no significant[8] criminal history before his arrest for his present offenses, which he committed when he was only 19 years old. He has incurred only minor infractions while in BOP custody, [Dkt. No. 95-7], all of which were more than two years ago. He has completed educational

---

because the Court still must consider the § 3553 sentencing factors, including the seriousness of the offense and the need to protect the public from future crimes of the defendant.

[8] In the Presentence Investigation Report, the U.S. Probation Office found no evidence of any prior convictions. Although the government acquired records from Kosovo that "reflect[ed] that defendant has been arrested for criminal offenses on multiple occasions in that country in the past," the records were never translated into English and no details are available. [Dkt. No. 57] at 17.

7

courses and drug treatment programs, and has been rated by BOP staff as a "low" risk for recidivism. [Dkt. Nos. 89-6, 95-1].

The government argues that the evidence that defendant is unlikely to reoffend is inadequate given that he will be "released to a foreign jurisdiction" where "there would be no way for this Court to monitor his behavior, or to ensure the safety of the community should he reoffend." [Dkt. No. 103] at 4. This somewhat alarmist position overlooks the expeditious way in which defendant was identified and apprehended after hacking the electronic store's database in 2015. Although the government generally complains about the "difficulty of obtaining evidence from overseas," it cites to no obstacles it encountered during the initial investigation and prosecution of defendant. Id. at 5. Moreover, Kosovo actively contributed to the government's investigation of defendant by assisting with his extradition from Malaysia, providing information about his computer activities, and flying law enforcement officials to the United States to discuss defendant's case. [Dkt. No. 104] at 5. This history of cooperation shows that the government of Kosovo is neither indifferent to defendant's activities, nor unwilling to help the United States with criminal investigations.

Lastly, as demonstrated by his previous motion, defendant has a family structure in Kosovo that will provide him with support. Given defendant's age; the more than five years he has spent in prison, including the particularly brutal months in the Malaysian prison; his health risks; and the conditions at Gilmer, defendant has established extraordinary and compelling grounds for release, which the § 3552 factors do not outweigh. Accordingly, the Renewed Motion [Dkt. No. 101] is GRANTED; and it is hereby

ORDERED that the 240 month sentence imposed in the Judgment on September 23, 2016, be and is reduced to time served, and it is further

ORDERED that the Bureau of Prisons (BOP) immediately place the defendant in a 14-day quarantine to ensure that he is not infected with the Covid-19 virus, and, upon completion of the 14-

8

day quarantine, release the defendant into the custody of ICE to be promptly deported to Kosovo; and it is further

ORDERED that defendant will remain on supervised release for the ten-year term imposed by the Judgment, which means that were he to violate any United States laws during that period, he would face revocation sanctions as well as sanctions for the substantive offense.

The Clerk is directed to forward copies of this Order to counsel of record and to the U.S. Probation Office.

Entered this 3rd day of December, 2020.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge

9